1-3-3159 Wrocklage v. DHS 1-3-3159 Wrocklage v. DHS May it please the Court, my name is Christopher Landrigan and I represent the petitioner in this case, Thomas G. Wrocklage. This case is about the agency not proving the charges against Mr. Wrocklage, the only serious charges against him, which are the lack of candor charge and the charge of unauthorized disclosure of text information in a manner that violated the Privacy Act. Mr. Wrocklage also believes that he was retaliated against for whistleblowing and that regardless the Lloyd LaFollette Act protects his conduct, the Court does not actually need to make a ruling on those to still rule in his favor in this case. Because we believe that the only charge that was actually supported does not justify removal, but instead warrants a remand to the Board for reconsideration of an appropriate penalty. I'd like to first start by talking about the lack of candor charge. You realize you might, even if you get what you just asked for, there's a good chance you'd end up in the exact same spot you're in now, because the deciding official did say that charge one alone would be a basis upon which he or she, I don't remember which it was, would have adopted removal as the penalty because of his prior misconduct. That while that charge standing alone in a vacuum might not normally warrant removal of an employee if it's a first offense with no priors, that Mr. Wrocklage had prior misconduct and in fact that this occurred less than two months after returning from the suspension from the prior misconduct. And so if I understand the facts right, you know, even if I give you everything you just asked for, we send it back to the Board, the deciding official's already said his piece, the Board's just going to look under the Douglas factors and decide whether it would have been an abuse of discretion for him to remove him on that one charge alone. And Your Honor, in that case, we do not believe the deciding official's opinion is entitled to any deference, because if you actually look at his one analysis, he never looks at that charge independently and looks at all the mitigating factors that would have applied to that singular charge. In fact, even in his discussion of the prior discipline, he doesn't link that up specifically just with the improper possession of tax records. So are you talking about whether he would have made the decision or whether the decision was reasonable, even if he would have made it? That is, removal on charge one alone. The deciding official certainly had a single statement in where he said, I would have sustained it, even if it was just this charge one. But the Board is only entitled to give deference to that opinion if the deciding official has actually considered all the mitigating charges, mitigating factors regarding just that one charge. And in this case, the deciding official clearly did not. And the agency's entire argument regarding how serious this case is rests solely on the idea that he violated the Privacy Act, privacy of the Millers in this case, and that he lacked candor. And if you take those two charges out of the picture, then there's no discussion of many mitigating factors that apply to just that one charge, an improper possession of tax records, that the report of investigation didn't even list that as a topic. The deciding official would have to have looked through all 12 of those, or whichever of those 12 Douglas factors were relevant, and looked at the harm of just the improper possession. And what was the harm of the improper possession here? He self-reported it. Even the Joint Intake Center, who he self-reported it, said, sure, go ahead, send it. As long as it stays within the agency, send it back to us. What was the harm to the Millers in this case? Nothing was disclosed regarding their actual privacy. The improper possession of tax records didn't create any sort of liability for the agency. And at the end of the day, Mr. Rockler is just trying to do the right thing in this case. So I don't think there is any sort of reasoned concern for all the appropriate Douglas factors in this case. I think it's much closer. Can I ask you a factual question? The charge itself doesn't use the word intentionally in terms of his improper removal of the tech information. He explains that he put this piece of paper in his jacket pocket, tossed his jacket over his desk, took the jacket home. Makes it sound like it was negligent at best, not intentionally even removing it from the property where it was supposed to be left. Did the government rely upon his stipulation that he had in fact, where he admitted to charge one? Or did they prove, and were there any fact findings on intentional removal? Because I would think intentionality would likewise go to the appropriate penalty in the end. And I don't remember seeing any fact findings that he intentionally removed it knowingly as opposed to negligently as he otherwise explained. That's exactly correct, Your Honor, to my understanding. We simply stipulated charge one. It didn't have anything to do with the intention. In fact, Mr. Rockler's explanation of the situation is they didn't even realize he had that in his bag. He was typing up the disclosure. What did he say he thought it was? A jacket in a bag. Okay, jacket in a bag. Got it. There's a bit of confusion there. Right, there wasn't much fact finding on that issue at all. It was just simply kind of stipulated. Did you likewise stipulate to charge two? You know, this is a tough issue for you because you've got a compelling case on the disclosure point, but the question of whether or not you waived it is a real problem. Your Honor, I do not think we waived it at all. We stipulated to the factual circumstances as stated in charge two, and then argued throughout the appeal that those factual circumstances did not constitute a disclosure. That was the whole point. The specification of charge two described how he sent the message and that he was not authorized to disclose that message. We agreed. In fact, there was really no debate here regarding the essential facts here. We just simply said. Just explain to me because I don't fully understand the process that went on. On page 45 of the JA, the union is representing Mr. Rockledge at this point. Yes. And they say the union will not dispute the TEC-related charges. However, the union does not believe the agency can prove the lack of candor charge. A little further down, it says turning to the offenses. As noted, the union does not dispute that the agency will likely be able to prove charges of improper possession of TEC information and an authorized disclosure of TEC information. The union does, however, dispute the charge of lack of candor. I'm a little bit confused about whether this is a stipulation to the charge. It's confusing because at the top they say we're not going to dispute these charges. Then they say the agency will likely be able to prove them, obviously implying that there still was a burden on the agency, that you weren't really just completely stipulating away charge one and two and saying go ahead and sentence me. So I guess I'm trying to understand the context, how I ought to read and interpret these statements. And I would say to first put in context, so this was the union responding to the notice of proposed removal. And in this case, they do at least indicate that they're in some ways not disputing this. I would argue they're basically not disputing the underlying facts of what occurred here. But if this shows any sort of concession to charge two, all that would indicate is that Mr. Rockledge at the time had a mistaken understanding of the application of the facts to the law. After this, Mr. Rockledge appealed it. And during the appeal, the agency has got to prove all the charges by preponderance of the evidence. So all this would show... Suppose that he came in and completely and utterly stipulated. So on appeal, the agency has to prove the underlying facts, even if he had earlier stipulated. That's correct. And what would probably happen is let's say that this was an actual fact in dispute. Let's say there's a question as to whether he sent the email or not. And in response to the notice of proposed removal, he said, I did send the email. And then in the appeal, he's saying, I didn't send the email. Well, then you have evidence that he actually did. In this case, all he had was a mistaken application of the facts to the law. There wasn't a disclosure that occurred. Maybe at that time he had assumed that a disclosure occurred. But when you really looked at the facts that are not in dispute, we argued right from the beginning of the appeal where the agency has got to prove all its charges that a disclosure did not occur. Can you say again? I think you said this, but I missed it. This March 18, 2011 statement is at what stage of the process? So in order to remove a federal employee under Title V, you have to propose removal. And then he gets an opportunity to respond. So he, with the union's assistant, responded to the notice of proposed removal, and then the agency made a decision removing him. At that point, you're allowed to – Is that what this does? That is what this is, the JA-45. This is before the petition for review to the MSPB. Exactly, before the removal occurred. And once you appeal, it's very clear that the agency has the burden to prove each charge. And again, it would be relevant if we're talking about a disagreement in the facts, that, hey, you admitted to it back here, but now you're trying to act like you didn't do it. Nobody's disputing the facts. We all know that the congressional staffer did not view the record at issue. And the only question there, so was it disclosed? Did Mr. Rockledge concede to Charges 1 and 2 in his deposition, the November 17th deposition? My understanding of the deposition is that he simply conceded that he did concede during his oral reply. He basically re-quoted his testimony and said, didn't you say this during your oral, and he said very accurately he did. To us, that's absolutely no concession of the charge during the appeal. It's just simply saying that's what he said during the oral, which is exactly what we're saying here. He did. He had a misunderstanding of the application of the undisputed facts to the law. And it would be relevant, again, if there was a fact of dispute, but there are no facts. Mr. Landrigan, why don't we save the rest of your time for rebuttal and hear from the government. Ms. Prehelm? Oh, Mr. Prehelm, I'm sorry. I probably didn't say that right. Is it Preheim? Yes, Preheim. That's right, Your Honor. Thank you. Thank you, Your Honor. May it please the Court. The Court should affirm the Board's decision. With respect to Charge 1, Mr. Rockledge never contested that charge, and as the Court noted, the deciding official made clear that that charge by itself was sufficient to warrant Mr. Rockledge's move. What is your view under the Douglas factors whether or not such a penalty would be reasonable if Charge 1 were the only charge sustained? Well, the question is whether that penalty determination is grossly disproportionate to the offense. But isn't the Board supposed to make that decision in the first instance, which they didn't do here? Well, but it is a harmless error analysis, Your Honor, and certainly here the deciding official provided an exhaustive analysis of the Douglas factors, including with respect to just this charge, Charge 1. If you look at pages 87 to 90 of the Joint Appendix, that's for Mr. Perry, the deciding official. That's his declaration, and he provides extensive analysis, noting that the importance and the significance of the improper possession of tax information charge. Now, Mr. Rockledge says, well, the deciding official didn't consider whether removal based upon this charge was consistent with a penalty given to other employees. I have to say this is really difficult for me because if suppose that, because what you're arguing right now is if Charge 1 stood alone, it would warrant affirmance of this penalty. And let's just consider all of the facts here. You've got a guy who's been employed for a really long time. He has an act of misconduct that warranted and got him suspension. And trust me, I looked and I know what the acts of misconduct are, and they don't thrill me, as you might imagine. But they got him a 21-day suspension, and then less than two months later, he comes back. And if all that is sustained is Charge 1, he inadvertently takes home in his jacket pocket a single piece of paper, because there is no proof of intentionality or finding, as I can tell. And then he immediately self-reported that he had done that by accident. Seriously, that's the guy you fire, the guy who inadvertently took something that was in his jacket pocket home, completely inadvertently, and self-reported. He could have easily brought it back to work, and nobody would have been the wiser if that were the case. If only Charge 1 is on the table, that does feel grossly disproportionate to me. Well, I would just note what the deciding official said with respect to this text information. He noted that a CBP officer is required to access and regularly use text information as an essential part of his job. Text records contain personally identifiable information on travelers that must be safeguarded from unauthorized use and disclosure. It also contains law enforcement-sensitive information on suspects, targets of investigation, intelligence, and information related to state and federal law enforcement. And Mr. Routledge acknowledged that he received extensive training about the text database and the importance of maintaining the integrity of that information. Yes, but the facts here are that he printed out this report, this tech report, in order to complain to a supervisor, who he distributed it to, about someone else's application of penalties over these two lemons. Also drives me crazy, to be honest with you. So he takes it to a supervisor. He didn't print it out, stick it in his jacket, and then take it home and say, oops, I inadvertently took it out. He gave it to a supervisor. Her supervisor returns it to him. He sticks it, according to him, and there aren't fact findings to the contrary right now, according to him, so he sticks it in his pocket after a supervisor gives it to him, goes back to his office, and has just completely forgotten that it was there. I don't know. That feels awfully reasonable, given that there aren't fact findings to the contrary, if that's the only thing. I think given the importance of this tech's information and the fact that it does contain a sense of information on national intelligence. Not this one. No, in general, the tech information. This particular one had only this guy's Social Security number. The only piece of private data was Social Security license plate or something like that. I mean, this particular report contained none of the information that you're explaining to us, other than those things in the way of privacy concerns. That's right. But maintaining the integrity of the tech's database is obviously critical to the agency's mission. And, again, one has to put it in context. As your Honor noted, Mr. Rockledge had a prior disciplinary action and committed severe misconduct. That misconduct ended up resulting not in his removal, but it was downgraded to a 21-day suspension, and shortly thereafter is when he committed these very acts. Not these. You were arguing only one. Shortly thereafter is when he accidentally took home a report in his jacket pocket. There were no findings of fact that it was accidental, Your Honor, but I will say he did take it home. Right, but the charge didn't even use the word intentional. That's right, which I think indicates that the agency viewed whether or not it was, regardless of the fact whether or not it was intentional, it was still a severe charge. No, the agency didn't say anything about it being a severe charge. It said that in terms of the charge, I certainly agree that whether it was intentional or not, it would be a violation, but certainly the intentionality ought to go to the punishment, don't you think? I mean, if somebody's intentionally printing out a bunch of private information and taking it home with them, that feels to me like somebody who is guilty to a greater extent than someone who inadvertently had it in their pocket because someone else handed it to them and took it home, and then self-reported on top of it all. That may be true, Your Honor, but we don't believe that means that the penalty here was grossly disproportionate to the offense. In fact, removal of text information for a second offense like the one here under the guidelines, the agency's penalty guidelines, can result in removal, which again indicates the seriousness with which the agency— Again, but again, you would think intentionality and the self-reporting and everything else would be taken into account, but let me give you a chance to move to your disclosure point, because I think this is a very important charge, too. I'd like to hear the government's view on why this amounts to a disclosure, given, you know, this is like the tree falls in the woods doesn't make a sound sort of idea, you know, so why is this a disclosure if the undisputed facts of record are she didn't read it? Well, first, Mr. Rutledge did admit this charge, and I think his deposition testimony makes that clear, but disclosure did occur here. Disclosure can be either the transfer of record or the granting of access. But here's an interesting thing. Do you know that—are you familiar with the In Re science application case? You ought to be, because it just—you just won on a Privacy Act case out of the District of Columbia, the district court here, and not only did the district court found that disclosure under the Privacy Act required somebody to view it and not just have access to it, but that's what you argued. I printed your briefs off this morning because since the decision came out in May of 2014, it was after the briefing in this case, and so I thought to myself, well, gosh, the government just prevailed on its definition of disclosure, so I pulled your brief to find out what your definition of disclosure was. It's not going to make you happy in this case. As you might imagine, it's the exact opposite of what you're standing here arguing to me. So I can read it to you if you need me to, but trust me, it's the opposite. So what do I do with this? Well, Your Honor, I would say this. With Mr. Rockledge, in fact, it's a couple of cases where courts have indicated that, well, if documents weren't viewed, then there was no disclosure. If you look at those cases, though, they involve situations, for example, where a document was sent to a fax machine that wasn't being monitored. It wasn't sent to particular individuals. There was no personal. Now I better tell you what the facts of this case were because it's not going to be a good distinguishing factor, and I feel a little guilty because you're not prepared on this case. Maybe I should have brought it to your attention, but do you know it? I don't know it, Your Honor, no. Okay, so let me quickly tell you the facts. A government employee had a bunch of tapes in the trunk of his car. They were stolen along with other personal items of his when his car was broken into. Tapes contained thousands and thousands of really, really private records about medical records of military members and their family members and other things, medical, lots and lots of private data. And what the government actually argued was the case ought to be dismissed because while the tapes were stolen, there's no evidence that anybody viewed the tapes. There's no evidence that the thief who took them actually viewed them. Since there's no evidence of viewing, there can be no disclosure because disclosure unequivocally requires viewing. That's what the government argued, and what? I don't think our argument here is inconsistent with that, Your Honor. If you look at the definition of disclosure, it is providing personal review of a record. But the facts of this case are she didn't view it. Well, but, Your Honor, in that case, it doesn't sound like anyone was providing personal review of a record. They were much like being sent to a fax machine where they may be viewed. That is not providing personal review or leaving a file cabinet unlocked so someone may have access. But the government said on the motion to dismiss there that a number of things were missing from the complaint that you persuaded the district court to dismiss. And the government specifically said here are the things that the complaint would have had to allege, and one of them is that the thief actually viewed the tapes, I guess, the personally identifiable information about each of the plaintiffs. Well, certainly if the thief had viewed the information, that would have been providing personal review. Right. The government said the complaint had to allege that. Well, it sounds like in the context of that case, that's true, Your Honor. Our case is a little bit different, and significantly so, because Mr. Rockledge actually sent these documents to a particular individual, to Ms. Berglund. He provided her with personal review. If you and I are sitting across the table, you know, in a coffee shop or something, and I hand you a sealed envelope, and we're sitting and we're talking for a while, and then I say, I'm thinking the better of it. Give that back to me. I've seen the envelope the entire time. It has not been opened. You handed it back to me. Have I disclosed the information in that envelope to you? I think in that instance you would have. You would have provided personal review. Now, the other person opted not to actually review the information, but you still provided personal review in that instance. That's similar to what happened here. Now, also in those other cases, those were civil actions brought by individuals against the government. I assume that's true in your case. But you actually argued, here's your brief, allegations of accessibility alone fail to establish a prima facie case of disclosure. Disclosure requires viewing by another. That's right. Allegations of accessibility alone. That's not what we're saying here. Here there was more. Judge Serrano's example was, I gave it to you. It was accessible to you. But we all agree you didn't view it. Well, accessibility, I think in that context, means leaving a file cabinet unlocked. Giving someone the opportunity to break into your car. That's different from actually, as Judge Serrano's example stated, handing someone an actual document. Or in this case, emailing a particular document to someone. That is providing personal review. Plaintiff's assertion that the federal defendants made available or otherwise exposed the information to the thief fails to satisfy their application to plead facts that such information was, in italics, actually disclosed to the thief. Well, I think I haven't read that, Your Honor. But I will say that, again, I think that's different from actually providing personal review. Maybe it wasn't stated in that context. But that certainly is how I would distinguish our case from that case. You raise, I think, a quite legitimate concern about whether a line that requires actual viewing or something like that would invite abuse. I guess not actually direct violation of the Privacy Act, because employees don't violate the Privacy Act, right? Only the agency does. So the employee can't put the agency in violation. But won't it nearly always be the case that an inference of actual viewing is so likely that people are not going to be somehow betting on the idea that information that they are putting out there is not going to be viewed? The reason, presumably, people put information out there is because it's going to be viewed. We have a very unusual situation where it is undisputed that the sole improper recipient of the sealed envelope did not open the envelope. So I'm not quite sure why there's a real-world practical worry about a line that says, where you have an undisputed absence of actual viewing, that that's not a disclosure. Which won't happen very often. Well, I think the important aspect here is that we're trying to prevent the sending of the information in the first place. I think that's the policy rationale behind this, behind the rule that we're espousing here. So we want to prevent Mr. Rockledge from actually sending this information over the Internet in the first place. No, I agree. I agree with that. And that's obviously a very serious concern. Question is if, as the government has been arguing, and the government is typically a defendant in these things, and it's certainly consistent with maybe even the dominant natural meaning of the term disclose, which is exposed to somebody else's eyes, where you know, undisputedly, that no eyes saw the information. Why is that really, why is there really a worry that there's going to be a lot of disclosure or attempts at disclosure or something because of this quite narrow, unusual situation? Well, again, we still don't want folks who are putting information out there, sending it to various individuals who are not authorized to look at that information. I think that's certainly a legitimate concern. And the concern that the agency was trying to address here. Well, then that would support the idea of an attempted disclosure rule, right? Like suppose that he fully intended to send it to Ms. Berglund, I think that's her name, and that he never pulled it back and he didn't self-report, but that it got bounced back because he typed her email address in wrong. He typed her email address in wrong. There's no doubt he didn't actually give her review potential because he typed her email address in wrong. How do you distinguish something like that from what you're suggesting? It almost sounds to me like you're suggesting an intent to disclose punishment, attempted disclosure punishment. I don't think intent is an element. It certainly is an element in those other cases, but it's not an element here. Again, the question is, is someone providing personal review? If they type in the wrong email address, it would seem to me that that's not providing personal review. Now, turning to charge three, the lack of candor charge. Lack of candor just means that one has to respond fully and truthfully. It's abundantly clear that Mr. Rockledge did not do so with respect to either specification here. With respect to the whistleblower defense, Mr. Rockledge violated the Privacy Act. He didn't have a reasonable belief that he was disclosing an abuse of authority. Just to be clear, logistically, if the only charge we would refer him on was charge one, the whistleblower defense just dissipates entirely, right? Because that's not relevant to charge one. I think that's right, Your Honor, yes. And would I also be right in thinking the following? If he disclosed this information, there's no further issue about whistleblower or 7211 because it doesn't matter what his reasonable beliefs were if he disclosed, if it was a disclosure, and the only way a disclosure, if it occurred, is not a violation of the Privacy Act, or rather the only way, if there was a disclosure here, it violated the Privacy Act, doesn't come in under any of the exceptions, and it's plainly the case that 7211 does not require the agency to refrain from punishing somebody for putting the agency in violation of the Privacy Act. That's right, Your Honor. So there's really just one question about, it's either a disclosure or not, and none of the other stuff about whistleblower actually matters. Well, if the court were to say this was not a disclosure under the Privacy Act, then the court would still have to consider whether or not Mr. Rocklidge had a reasonable belief that he was reporting an abuse of authority. And moreover, the court would still have to consider the question of whether or not the agency proved by clear and convincing evidence that it would have taken this action regardless. Explain that to me. So if the sending of the email attachment to the congressional staffer was not a disclosure, then what? So if it didn't violate the Privacy Act, if it wasn't a disclosure, there were two other reasons why Mr. Rocklidge's whistleblowing defense was rejected. One of them is that he did not have a reasonable belief that he was disclosing an abuse of authority. And then the second reason the defense was rejected is because the agency demonstrated by clear and convincing evidence it would have taken this action regardless of the disclosure. I guess I'm confused. Are you now changing your answer to my question, which was, I said, if we were to only affirm the agency on Charge 1, would that moot the need to reach his whistleblower claim altogether? And I thought that you had said yes. I think that's right, yes, because Charge 1 doesn't concern his whistleblowing activities. Okay. But couldn't he still argue that you were retaliating by firing him on the basis of Charge 1 because of his whistleblowing activities, maybe? Well, if one looks at... I don't know. But if one looks at Charge 1, it really doesn't say anything about the disclosure. It's simply misuse of the text information. Well, thank you. Let's give him a chance to have his rebuttal time, and you can extend it by three minutes because we went over with the government to balance the time out. Thank you. Thank you very much. Your Honor, there would have been a very simple way to address whatever concern the agency had with sending the text message. Charge him with transmittal. Charge him with poor judgment. Charge him with disclosure. And then argued how serious it was because the information was disclosed. The Burroughs case is very clear that whatever you charge him with, you got to prove. So if they had a concern about sending something, exercising poor judgment, something like that, just charge him with that. Would that have been a violation of a standard of conduct, even if it didn't amount to a disclosure in violation of the Privacy Act? If they had charged him with something else? With transmitting the sealed envelope. A charge of something like poor judgment because of a transmittal, there's very broad charging. There's many ways you could have addressed this particular action. Are you familiar, and maybe the answer is no, with the government's general practice in arguing as a defendant in Privacy Act cases about the scope of disclosure? Is the recent District of Columbia case in line with a limited view that the government has pressed often? Absolutely. I would say in the Luster case in particular, that was the case of the fax machine. It wasn't even just a case where a fax was sent to some unknown fax machine somewhere that may be accessed by somebody. There was actually evidence there that an employee walked by, looked at it, saw a cover sheet, but then didn't read anything further. In that case, no disclosure occurred. Why? Because they didn't actually read the protected information underneath the cover report. And under the Privacy Act, there's a civil remedy, Section G, I think it is, requires actual harm to the plaintiff, which itself would seem to me to require actual disclosure. So what work is done in the government defense arguments about limitation on the term disclosure that isn't independently done by the requirement of actual harm, I guess, as the Supreme Court said, on the matter of the civil remedy provision? Yeah, and I'm not as familiar with whether you can basically cancel out any need to prove disclosure because you need to prove actual harm. I don't know the information on that. I do know, though, that the term disclosure has been litigated, so there must be something about that point. And every court that's looked at it has come out and decided that it requires actual viewing, not just mere accessibility, something along those lines that needs to be imparted. Does it matter the medium that we're talking about? For example, if I mail an envelope with information and yet I beat the postman there and I retrieve it, or if I send a fax to a specific phone number and the fax arrives there and nobody picks it up, what about the Internet when you send an attachment and generally you don't know what's happened to that? And possibly in some other cases it could present a difficult issue as to whether you prove whether somebody had viewed the information or not. So in this case, the court doesn't even need to make a very broad ruling about applications online or things like that because, as was discussed, we know what happened here. We know it went to one person and we know that one person did not open and view it. I don't think there's necessarily any distinguishing factor. I think the government would have to prove that something has been disclosed to charge somebody with it or on the civil side the plaintiff would actually have to prove that somebody read it regardless of the medium. But this case is even simpler than that. Do you agree with the government when they indicated that if we were to sustain only charge one, there would be no need to reach any of the whistleblower defenses? No, Your Honor. You'd still have to have the same analysis of were they basically trumping up the charge to fire him for charge one if there's a connection with his whistleblowing. You'd have to go through that whole analysis. Why? If we were to do this in light of charge one being the only charge sustained, do we really need to reach the whistleblower then? No. You wouldn't need to and that's what I was explaining from the beginning. This court does not need to reach a conclusion about the whistleblower. You can just simply remand it for an appropriate penalty which we think will come out on the side of less than removal. And also, I need to clarify the deciding official's opinion again is not entitled to deference. We talked about that and I wanted to point to one specific example where you can see that he was reviewing the Douglas factors in terms of all three charges. If you look at the Joint Appendix 88, you can see they dismisses the consistency of penalty argument for other offenses by saying no other CBP employee has removed text information from the workplace without authorization, disclosed that information without authorization, and then failed to be candid and forthright during a formal investigation. The deciding official is considering all three of those arguments together. Can I just return to something that's just confusing me? If there's no disclosure, how does the Whistleblower Act apply? Isn't the Whistleblower Act by its term says government can't take a personnel action with respect to an employee because of any disclosure of information? If there's no disclosure, what's left of a whistleblower claim? What was disclosed was the content of the email itself. Email, not the attachment. Right, exactly. The email record that might be left. Exactly. I'd also like to briefly address the lack of candid charge as well. Well, you got one sentence because we're over time. Oh, okay. That's okay. Go ahead, one sentence. They have to prove an element of deception. That's my point. Thank you very much. We have on your briefs what that means.  I like short sentences. No semicolons like most people try to pull out. Thank you very much to both counsel. This was very helpful to the court. I'll take the case under submission.